UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

:
**JUUL LABS, INC.,**                         :        **Civil Action No. 18-15444 (KM) (MAH)**
:
**Plaintiff,**           :
:
v.                              :                      **OPINION**
:
**4X PODS, et al.,**                          :
:
**Defendants.**              :

---

## I.   INTRODUCTION

This matter comes before the Court on Juul Labs, Inc.'s ("JLI") Motion for Leave to File

an Amended Complaint.  D.E. 108.  Pursuant to Federal Rule of Civil Procedure 78 and Local

Civil Rule 78.1, the Court decides this motion without oral argument.  For the reasons set forth

below, the Court will grant JLI's motion.

## II.   BACKGROUND[1]

Plaintiff brings claims for violations of the Lanham Act, copyright infringement, and NJ

common law.  Plaintiff manufactures electronic nicotine delivery systems ("ENDS").  Complaint,

Oct. 30, 2018, D.E. 1, ¶ 2.  The ENDS use two components: "(1) a device and (ii) disposable pods

("JUUL pods") prefilled with a proprietary mixture of vaporizer carriers, nicotine salt extracts, and

flavoring (together, "e-liquid")."  *Id.*, ¶ 3.  A user would insert the pod into the device and then

use the mouthpiece to inhale.  *Id.*  That causes the e-liquid in the pod to heat up and allows the

---

[1] Because the Court writes for the parties, the Court briefly summarizes the pertinent facts.  The
Court also assumes as true the factual allegations in the complaint for the purpose of this motion.
*See Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851-52 (3d Cir. 1992).

user to inhale the vaporized e-liquid.  *Id.*  JLI has federally registered trademarks for its refill pods, *id.*, ¶ 22, and copyrights for the visual works depicted on JLI packaging.  *Id.*, ¶ 35.

JLI alleges that Defendants manufacture and sell a product known as "4X PODS," and that "[t]he 4X PODS product, on its face, copies virtually all components of the JUUL Pod Logo Trademark, JUUL Packaging Trade Dress, and Copyrighted Works."  *Id.*, ¶¶ 40-43.  JLI further alleges that "the 4X PODS brand packaging prominently bears the JUUL trademark, and slavishly copies virtually all elements of the JUUL Packaging Trade Dress, which strongly indicates Defendants' intent to copy, and necessary knowledge of, JLI's trademarks and trade dress."  *Id.*, ¶ 45.  According to JLI, Defendant Gregory Grishayev organized and directed the alleged infringing conduct, and Defendant Electric Tobacconist has engaged in the distribution and sale of 4X PODS products.  *Id.*, ¶¶ 48-49.  In terms of damages, the Complaint alleges that the alleged infringement has caused confusion in the marketplace.  *Id.*, ¶ 42 & n.8-9, ¶¶ 54-55.

JLI now moves for leave to file an Amended Complaint to:  (1) name Eonsmoke, LLC, doing business as 4X PODS, as the corporate Defendant; (2) name Michael J. Tolmach as a Defendant; (3) add an additional claim against Mr. Tolmach to hold him individually liable for the alleged infringement of JLI's copyrights, trade dress and trademarks; (4) add a claim for infringement of JLI's JUUL Wordmark, Registration No. 4818664; (5) plead that if it prevails on its claims against Defendants, the Court in awarding relief should pierce the corporate veil of Eonsmoke and hold Defendants Grishayev and Tolmach personally liable; and (6) plead additional facts showing the harm to Plaintiff and its reputation.  Defendants argue that the Court should deny JLI's motion to amend because the amendment is the result of undue delay and bad faith, it is futile, and granting the motion would prejudice Defendants.

### III.   ANALYSIS

The first issue for the Court is whether Federal Rule of Civil Procedure 15 or 16 governs Plaintiff's motion to amend. *Karlo v. Pittsburgh Glass Works, LLC*, Civ. No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo,* 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)).

There is a recognized tension between Rule 15 and Rule 16 that has not been directly resolved by the United States Court of Appeals for the Third Circuit. *See Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d. Cir. 2010); *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 118 (W.D. Pa. 2010). However, courts "within the Third Circuit have consistently reached the same conclusion: a party seeking to amend the pleadings *after the deadline set by the Court* must satisfy the requirements of Rule 16(b)(4)—i.e., they must show 'good cause.'" *Karlo*, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)) (emphasis added).

Here, JLI initially sought leave by letter application to file the proposed amended pleading on October 31, 2019, before the deadline set by this Court for doing so, *i.e.*, November 15, 2019. Defendants filed a letter objecting to the proposed amendment on November 1, 2019. Therefore, on November 4, 2019, the Court directed Plaintiff to file a formal motion to amend on or before December 6, 2019. Plaintiff filed the instant motion on December 4, 2019. Based on these facts in the record, the Court finds that Plaintiff's request to amend its pleading was made before the deadline for doing so. Accordingly, the Court need not consider Rule 16, and instead, will turn to Rule 15 to determine whether to permit JLI to file its amended pleading.

Under Rule 15 of the Federal Rules of Civil Procedure, a plaintiff may amend his or her complaint once as of right, and "courts may grant subsequent amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). Further, "leave to amend should be freely given when justice so requires, including for a curative amendment unless such an amendment would be inequitable or futile." *Free Speech Coalition, Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012). The Court may deny leave to amend the pleadings only when there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

Defendants argue that JLI has unduly delayed in seeking to amend its pleading. Br. in Opp., Dec. 23, 2019, D.E. 134, at 3-4. Defendants also contend that JLI's proposed amendment to pierce the corporate veil to award relief if this litigation proves successful is brought in bad faith. *Id.* at 4-6. Next, Defendants contend that they will suffer prejudice if the amendment is granted because it will delay the final adjudication of the merits of this action and cause Defendants additional expense. *Id.* at 6-7. Finally, Defendants maintain that JLI's amendments to pierce the corporate veil and add a claim for infringement of the JUUL wordmark claim are futile because they will not survive a motion to dismiss or summary judgment. *Id.* at 7-8. The Court will take each argument in turn.

**A. Undue Delay**

While delay alone is insufficient to justify denial of leave to amend, "at some point, ... delay will become 'undue,' placing an unwarranted burden on the court ... [and] an unfair burden on the opposing party." *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to

amend is properly denied. *Id.* "[T]he question of undue delay requires that we focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "Indeed, amendments may be made during trial, after the close of testimony, or even after judgment." *Ajax Enterprises v. Fay*, Civ. No. 04-4539, 2007 WL 766335, *2 (D.N.J. Mar. 7, 2007) (citing Wright, Miller & Kane, Federal Practice and Procedure Civil 2d § 1494, at 51–52). "Leave to amend a complaint should only be denied because of undue delay if the delay causes the non-moving party to be prejudiced." *Cincerella v. Egg Harbor Tp. Police Dept.*, Civ. No. 06-1183, 2007 WL 2682965, at *2 (D.N.J. Sept. 6, 2007). If the court extends the deadline to amend, it is settled that the *new* deadline is the proper focus when inquiring as to the timeliness of a motion to amend. *See Tri 3 Enters., LLC v. Aetna, Inc.*, No. 11-3921, 2015 WL 758879, at *15 (D.N.J. Feb. 23, 2015) (noting that the amendment was timely and not the result of undue delay because it was within the new deadline as determined by the court).

Defendants argue that the Court should deny JLI's motion to amend because Plaintiff did not begin taking any depositions until after the *original* deadline to amend, which was March 29, 2019. *See* Br. in Opp. at 3. Defendants also maintain that Plaintiff only filed a letter request seeking leave to amend, rather than the requisite motion, requiring the Court to extend Plaintiff's deadline for moving to amend. *Id.* Defendants further posit that Plaintiff could have filed the instant motion immediately after Eonsmoke's initial document production and first round of depositions, which occurred over six months ago. *Id.* Finally, Defendants maintain that permitting the amendment at this late stage will require the Court to re-open discovery and extend the deadlines in this case indefinitely. *Id.* at 4. These arguments fail. There is nothing in the facts before this Court which indicates that JLI's failure to amend the Complaint earlier in the litigation is the product of "undue delay."

The Court does not find evidence of undue delay for several reasons.  First, any "delay" in Plaintiff's discovery timeline and subsequent motion to amend is directly attributed to Defendants' clear and consistent pattern of noncompliance with discovery requests. *See* Order, Jul. 12, 2019, D. E. 77 (directing Defendants to produce certain discovery and extending deadlines); Order, Oct. 4, 2019, D.E. 92 (ordering Defendants to produce a 30(b)(6) witness); Order, Oct. 21, 2019, D.E. 98 (directing Defendants to renew their search for Skype messages and produce them). Indeed, as Plaintiff points out, these delays led Plaintiff to discover important Skype messages that are material to its case on October 17, 2019, almost one full year *after* they had been requested, and only a few weeks prior to the deadline to amend.  *See* Pl.'s Brief in Support of Mot. To Amend at 13.  Moreover, Defendants did not produce financial documents related to the sale of the allegedly infringing products and  raw invoice data, including sales invoices until October 28, 2019 and November 5, 2019, respectively.  Decl. of Arthur W. Coviello, Esq., Dec. 4, 2019, D.E. 108-1, Exh. G, D.E. 109-4, Copy of the Document Produced by Defendants on October 28, 2019, Bearing Bates Numbers EON029800-EON029826; Exh. H, D.E. 109-4, Excerpts of Documents Produced by Defendants on November 5, 2019, bearing bates numbers EON018827-EON025820.  This Court extended the deadline to amend the pleadings to December 6, 2019; Plaintiff filed the instant motion on December 4, 2019, which plainly falls within the December 6 deadline.  D.E. 107, 109.  Further, Plaintiff sought leave to amend within six weeks of receiving the Skype messages, financial documents and raw financial data which form the basis of the proposed amendments.  Under these circumstances, the Court cannot find that Plaintiff's proposed amendments are the product of undue delay.  Any delay is due in significant part to Defendants' failure to produce discovery in a timely manner.  Accordingly, the Court cannot find JLI's amendment at this time is the product of undue delay.

### B.  Undue Prejudice

While the question of undue delay and bad faith focuses on the plaintiff's motive for not amending earlier, the issue of prejudice focuses on the effect on Defendant.  *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).  The factors have been interpreted to mean that "'prejudice to the non-moving party is the touchstone for the denial of an amendment.'"  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir.1978)).  An amendment that changes the legal and factual basis may create undue prejudice, especially when new discovery, costs, and preparation are required to defend against the new theories.  *Luciani v. City of Philadelphia*, 13-4077, 2016 WL 861042, at *2 (3d Cir. 2016).

In deciding whether the proposed amendment would unfairly prejudice Defendants, courts consider whether permitting the amendment would (1) require defendants to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction.  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).  The Court does not find that granting Plaintiff's proposed amendment would unduly prejudice Defendants.  Although Defendants argue that granting Plaintiff's motion would extend the litigation, mere inconvenience in defending a suit does not constitute undue prejudice.  *See Harrison Beverage*, 133 F.R.D. at 468 ("[I]ncidental prejudice to the opponent is not a sufficient basis for denial of an amendment; such prejudice becomes "undue" when the opponent shows it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered.") (citations omitted) (internal quotation marks omitted). Defendants' argument that they will be prejudiced if Plaintiff is permitted to amend falls flat.  First, Plaintiff aptly notes that most of the discovery pertinent to the

new claims had already been requested at the time the motion was filed.  *See* Pl.'s Brief in Support of Mot. To Amend at 15.  At the time of filing, the depositions for the individual defendants had not yet occurred, further bolstering Plaintiff's claim that a significant expansion of discovery is not needed.  *See Id.* at 15-16.  Any increased expenditure of resources to defend these new claims account for merely the "incidental prejudice" contemplated by the *Harrison Beverage* court.  Indeed, it might have been the case that these claims could have been fully pled earlier in this litigation had Defendants complied with Plaintiff's reasonable discovery requests.  Therefore, Plaintiff's motion cannot be denied on grounds of undue prejudice.

### C.  Bad Faith

Whether a party has acted in bad faith in moving to amend the pleadings focuses on the movant's motives for not amending the pleading earlier in the litigation.  *Adams*, 739 F.2d at 868.  "[T]here generally must... be some extrinsic evidence to indicate that a litigant acted in bad faith before a motion to amend will be denied on this ground."  *See Diallo v. ALO Enters. Corp.*, Civ. No. 12-3762, 2013 WL 3772827, at *3 (D.N.J. July 17, 2013) (citations omitted).

Defendants contend that Plaintiff's attempt to utilize the "alter ego" theories against Grishayev and Tolmach demonstrates bad faith because Plaintiff simply intends to harass and intimidate these Defendants.  *See* Br. in Opp. at 4.  Defendants further argue that Plaintiff has failed to allege a plausible basis to pierce the corporate veil simply because Grishayev and Tolmach, as principals of a two-man operation, have been personally involved in their LLC's decisions.  *Id.* at 4-6.

Measured against the high standard to find bad faith, Defendants' arguments plainly fail.  Defendants argue that in seeking to amend the Complaint to pierce Eonsmoke, Plaintiff is acting in bad faith.  But a review of the amended pleading does not, as Defendants seem to suggest, show

any signs of harassment or intimidation.  As will be discussed within the upcoming section regarding futility, it is settled law that veil piercing is available within the context of the LLC and its individual members.  *See Operative Plasterers & Cement Masons Int'l Ass'n Local 8 v. AGJ Constr., LLC*, No. 08-6163, 2009 WL 2243900, at *17-20 (D.N.J. July 24, 2009) (finding that the pleading standard was met because defendant LLC failed to observe corporate formalities in an effort to avoid an adverse federal judgment).  Plaintiff pleads facts that point directly to this lack of corporate formalities, and it includes explicit language from Defendants that express an intent to hinder and delay Plaintiff's ability to collect a judgment.  *See* Pl.'s Reply Brief in Support of Mot. To Amend at 15 ("Mr. Tolmach: '…I'm not going to keep my $20 million in my business so maybe you guys can win something for me in the future. This is what prudent businessmen do; they sweep.'"); *see also id.* at 13-14 ("Q: [T]he 4X packaging was specifically designed to hide the fact that it was affiliated with Eonsmoke, correct?... A: Yes.") (citations omitted) (internal quotation marks omitted).  The Court finds that Plaintiff's inclusion of a veil piercing and pursuit of individual liability is grounded in a good faith belief that Defendants' conduct meets the threshold for liability.

To the extent Defendants argue that Plaintiff's delay in bringing these additional claims is the result of harassment or otherwise impermissible strategy, the Court is not persuaded. Considering that Defendants' recent discovery materials potentially implicated both of Eonsmoke's members, it simply cannot be said that Plaintiff was trying to harass Defendants rather than trying to assert a reasonably viable claim of veil piercing.  Based upon the record, and as repeatedly noted throughout this Opinion, it appears that any delay in bringing these additional claims are the direct result of Defendants' noncompliance with discovery requests.  For example, Defendants delayed providing certain discovery requests for almost a full calendar year; these

materials directly related to the potential individual liability of Eonsmoke's members, and the materials were produced shortly before the deadline to amend. *See* Pl.'s Reply Brief in Support of Mot. To Amend at 10 ("Defendants delayed producing these Skype messages for nearly a year after JLI requested them in November 2018, despite JLI's repeated requests, and despite the Court's Order that such communications be produced by August 15, 2019."). Moreover, Defendants offer no extrinsic evidence of bad faith, which, as stated above, is usually a requirement to succeed on a claim of bad faith. Instead, Defendants rely upon conclusory allegations that only focus on internal aspects of this case, without even mentioning the extrinsic evidence requirement. *See* Br. in Opp. at 4-6. Accordingly, the Court declines to find that JLI's motion to amend was made in bad faith.

### D. Futility

A court will consider an amendment futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage*, 133 F.R.D. 463, 468 (D.N.J. 1990) (citations omitted). To determine whether an amendment is insufficient on its face, the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Harrison Beverage*, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. *Fowler*, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. *Id.* at 210–11; *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3rd Cir. 2010); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted)).

Second, as stated above, a court determines whether the plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Fowler*, 578 F.3d at 211. As the Supreme Court instructed in *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Although the plausibility standard is not a "probability requirement," the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task ... requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Defendants attack two bases of Plaintiff's case as being futile: (1) Plaintiff's claim for infringement of its registered mark, and (2) Plaintiff's argument regarding the appropriateness of piercing Eonsmoke's corporate veil. Br. In Opp. at 6-7. As to Defendants' first ground for futility, Defendants seem to argue that use of a registered mark in a hashtag is presumptively or *per se* fair use, but that is simply not the case.

### 1. Trademark Infringement

To establish a claim of trademark infringement under the Lanham Act, a plaintiff must prove three elements: "(1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991).

The third element (likelihood of infringement) is shown "when the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Id.* at 292. The Third Circuit has developed the following factors to be weighed during this inquiry:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of the public because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.

*Scott's Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir. 1978). When these factors are viewed through the lens of potential infringement by a competitor in the marketplace, the first factor "takes on great prominence." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 214 (3d Cir. 2000). Indeed, the "similarity of the marks" factor has been deemed "[t]he single most important factor in determining the likelihood of confusion" when dealing with competitor infringement. *Id.* at 216.

Framing the analysis within the context of social media, it has been established that the use of a registered mark in a hashtag without consent can form the basis for a claim under the Lanham Act. *Chanel, Inc. v. WGACA, LLC*, No. 18-2253, 2018 U.S. Dist. LEXIS 158077, at \*5-6 (S.D.N.Y. Sep. 14, 2018). Chanel, Inc. ("Chanel") sued WGACA, LLC ("WGACA"), a retail business, under the Lanham Act for its wrongful use of Chanel's registered brand name in WGACA's digital and social media marketing. *Id.* at \*1. Of note to the instant case, WGACA used the Chanel brand in its social media hashtags, such as "#WGACACHANEL." *Id.* at \*3. The court expressly rejected WGACA's argument that this qualified as nominative fair use, as the close association between WGACA's brand and products to this hashtag could create confusion as to the true nature of the relationship between WGACA and Chanel, and these facts led the court to deny WGACA's motion to dismiss Chanel's claim. *Id.* at \*7-9.

Turning to the instant case, it is not disputed that Plaintiff's mark is valid and legally protectable, nor is it disputed that Plaintiff owns the mark. Thus, assessing the futility of Plaintiff's infringement claim turns on the third Lanham Act element. When weighing the factors, the similarity of the marks is likely sufficient to meet the pleading standard. This is not because the mark used by Defendants are *similar* to Plaintiff's mark; rather, this is because the mark is *identical* to Plaintiff's mark. Defendants clearly used hashtags such as "juulgang," unequivocally using Plaintiff's registered mark without any alteration. *See* Prop. Amend. Compl., D.E. 109-1, ¶ 62. Considering that this factor is the "single most important" factor in this analysis, and coupling that principle with Defendants' identical use of Plaintiff's registered mark, it cannot be said that Plaintiff has not met the pleading standard as to its Lanham Act claim.

Defendants' fair use argument is plainly erroneous when measured against WGACA's hashtags in *Chanel, Inc.* For example, Plaintiff asserts that Defendants used hashtags such as

"#doit4juul" and "#juulnation," all in conjunction with images of the Eonsmoke product.  *See* Pl.'s Brief in Support of Mot. To Amend at 4-5.  The Court finds that this pairing of Plaintiff's brand name with images of Eonsmoke's product may create the same potential confusion as to the relationship between the two as in *Chanel, Inc.*  Consequently, the Court finds that Plaintiff plausibly pleads sufficient facts to allow the Court to draw the reasonable inference that Defendants are liable for violating the Lanham Act, and as such, the claim is not futile.

### 2. Veil Piercing

Turning to Defendants' argument that Plaintiff's attempt at veil piercing is futile, the Court disagrees.  Courts in New Jersey apply a two-element test when determining whether veil piercing is appropriate in a given case: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.  Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."  *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (citations omitted) (internal quotation marks omitted).  It is important to appreciate that veil piercing is not an independent claim, nor should it be overlooked that avoiding personal liability is a common (and acceptable) reason to incorporate; rather, veil piercing is "an equitable remedy designed to remedy a fundamental unfairness perpetrated under the guise of the corporate form."  *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 424-25 (D.N.J. 2019).  The unity of interest element entails a multi-factor analysis:

> gross undercapitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is

> merely a facade for the operations of the dominant stockholder or
> stockholders.

*Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (quoting *American Bell Inc. v. Federation of Telephone Workers*, 736 F.2d 879, 886 (3d Cir. 1984). As to the second element (fraud or injustice), "a plaintiff need not prove common law fraud but instead demonstrate that the defendants, via the corporate form, perpetrated 'a fraud, injustice, or the like,' a less exacting standard." *Linus Holding Corp.*, 376 F. Supp. 3d at 425 (quoting *Mall at IV Group Props., LLC v. Roberts*, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005)).

In an attempt to demonstrate why Plaintiff's request to pierce the corporate veil is futile, Defendants rely upon a recent decision by Chief Judge Wolfson in *Linus Holding Corp.* Specifically, Defendants rely on Judge Wolfson's discussion regarding undercapitalization and why that, alone, is insufficient to satisfy the first element of the veil piercing test. Br. In Opp. at 5-6. However, Defendants overlook that Plaintiff relies on several other factors outlined in *Linus Holding Corp.* to demonstrate that piercing the corporate veil is appropriate here.

Most notably, Plaintiff notes that Eonsmoke is merely a façade for the operations of its individual members, Grishayev and Tolmach. *See* Prop. Amend. Compl., D.E. 109-1, ¶ 147. As noted in *Linus Holding Corp.*, establishing that an entity is merely a façade for its individual members can satisfy the unity of interest element and form the basis for veil piercing. *Linus Holding Corp.*, 376 F. Supp. 3d at 425 (citing *Craig*, 843 F.2d at 150). At least two of Plaintiff's allegations evince a plausible theory that Eonsmoke is a façade. First, Plaintiff presents messages between Grishayev and Tolmach that expressed a decision to treat a "family account" as "the Eon[smoke] checking acc[oun]t." *See* Prop. Amend. Compl., D.E. 109-1, ¶ 141 (first alteration added). Additionally, Grishayev and Tolmach actively tried to conceal the fact that Eonsmoke even existed *at all* while they sold the 4X Pods product:

> Defendants intentionally attempted to conceal the fact that 4X PODS were an Eonsmoke product, including by lying to their suppliers. Ex. 2 (Tolmach Tr.) 142:13-19 ("Q. You didn't advertise that 4X Pods was a brand of Eonsmoke when you sold the original 4X Pods packaging, correct? A Correct. No. Q You wanted to keep that information hidden at the time, correct? A I did, uh-huh."); Ex. 3 (Grishayev Tr.) 147:4-10 ("Q. [T]he 4X packaging was specifically designed to hide the fact that it was affiliated with Eonsmoke, correct?... A. Yes."); id. 259:11-19 ("Q. But you would agree that Eonsmoke was lying to its supplier Greensun about Eonsmoke's affiliation with 4X, correct? A. Again, I didn't write this statement. But we mentioned that it wasn't us, yes. Q. And that statement was not true, correct? A. Yeah, that was a false statement.").

Pl.'s Reply Brief in Support of Mot. To Amend at 13-14 (quoting deposition transcripts of Grishayev, Decl. of Arthur W. Coviello, D.E. 143-1, Exh. 3, and Tolmach, Decl. of Arthur W. Coviello,, D.E. 143-1, Exh. 2).  Moreover, Plaintiff asserts that other unity of interest factors considered by the Third Circuit in determining whether veil piercing is appropriate are present here, such as:  Eonsmoke's gross undercapitalization, Tolmach and Grishayev's siphoning of Eonsmoke's profits to their personal accounts, Tolmach and Grishayev's failure to observe corporate formalities, and Tolmach and Grishayev's intention to transfer assets out of Eonsmoke to ensure they would be judgment proof.  *See* Prop. Amend. Compl., D.E. 109-1, ¶¶ 136-149.

As to the second element (perpetuating a fraud or injustice), Plaintiff plausibly pleads sufficient facts to plausibly show that Defendants are perpetrating a fraud.  Not only does Plaintiff allege that Defendants' conduct is plausibly fraudulent in that the corporate form was used to infringe upon Plaintiff's mark and potentially create confusion in the marketplace by attempting to appear to own the Juul-related hashtags, but Plaintiff also asserts that Defendants' use of the corporate form perpetuates a plan to avoid FDA compliance while still marketing the 4X PODS. *See* Prop. Amend. Compl., D.E. 109-1, ¶ 147.  It could hardly be said, at least at this stage in the litigation, that the possibility of using the corporate form to avoid regulation by the FDA is *not* an

injustice.  Thus, the Court finds that Plaintiff pleads a plausible basis for piercing the corporate veil.

**IV.     CONCLUSION**

For the foregoing reasons, the Court grants JLI's Motion for Leave to File an Amended Complaint.  An Order accompanies this Opinion.


                                        _s/ Michael A. Hammer_____
                                        **Hon. Michael A. Hammer**
                                        **United States Magistrate Judge**

**Dated: April 28, 2020**